Henry W. Lengyel, J.
The defendant has moved for an order dismissing this claim for $3,599,761 on the grounds that the Court of Claims does not have jurisdiction of the subject matter of the claim and, further, that the claim fails to state a cause of action.
The facts which underlie this claim were set forth by Judge Keating, writing for a majority of the Court of Appeals, in Matter of Keystone Assoc. v. Moerdler (19 N Y 2d 78, 85-86): u In the early part of this year [1966] the Metropolitan Opera Association (the Association) vacated the building it had used for over 83 years and moved to a new building in the Lincoln Center for the Performing Arts.
“ The Association, prior to its departure, entered into a 50-year lease with the plaintiff, Keystone Associates Incorporated, under the terms of which Keystone was to demolish the building and erect thereon a 40-story office building. The new building was to become the property of the Association and Keystone would pay a yearly rental fee. This rental fee totaled $200,000 *456 for the first four years and amounts graduated upward thereafter to comprise an average annual rental of $484,000. In addition, Keystone undertook to assume the burden of all taxes, insurance, maintenance and operating costs from the date on which possession was delivered. The lease also required that demolition commence within six months after possession was taken by the lessee, and that $1,000,000 be posted as security for the performance of the contract.
“ On May 10, 1966 possession of the property was delivered to Keystone after all usable .stage and lighting equipment had been removed to the new opera house. On May 16, 1966, Keystone filed a written notice and application for a permit to demolish the building. On the same date the statute here in question was enacted. [L. 1966, ch. 691.]
“ The Legislature declared that it would serve the ‘ recreational and cultural needs of the citizens of this state ’ if the old building were preserved. To this end it created a private corporation, The Old Met Opera House Corporation (the Corporation), vested it with the power to condemn the property and appropriate it for use as an auditorium in which operas and other musical and cultural events could he held. ’ ’
‘1 It provided in addition that the Superintendent of Buildings of the city could refuse a demolition permit for a period of 180 days upon the request of the trustees of the Corporation and upon the deposit by the trustees of $200,000. This sum was to stand as security for payment of any damages the owner might suffer in the event no condemnation took place.
“ Though the statute was passed on the 16th of May it was not signed by the Governor for some six weeks. The $200,000 security was not posted until the 24th of August. In the interim the Buildings Commissioner delayed issuance of the permit so that the Corporation might have a reasonable time to organize and raise funds.
“■Shortly after the Governor approved the statute, this proceeding to compel issuance of the license was initiated by Keystone. In addition, the Association commenced an action to declare the statute unconstitutional.
“ Special Term declared the statute to be a taking of the Association’s and Keystone’s (the ‘ owners ’) property during the 180-day period. It found in addition that the $200,000 would he insufficient to cover the damage certain to be suffered by them and that by limiting recovery to that amount the Legislature illegally invaded the judicial province.
‘' The Appellate Division has unanimously affirmed that determination.”
*457 The Court of Appeals affirmed the lower court decisions. It stated that “ the purpose of this statute is the appropriation of * * * property to a public use.” (p. 86); that “ Since this is clearly and explicitly a condemnation statute, the question is to what extent, pending exercise of the power of condemnation, the Legislature may interfere with the rights of property owners to build upon or improve their property.” (p. 87); that ‘ ‘ The deprivation here, not being incidential to a lawful exercise of the police power, is * * * unreasonable and constitutes a taking of property for which just compensation must be paid if the statute is to he upheld ” (p. 88; italics added); that, “ The law of this State is clear that the determination of just compensation is a judicial function and that the Legislature cannot set the maximum figure on the amount of compensation that will be paid. * * * this statute * * * constitutes an unreasonable interference with property rights for which the State must provide a sure and certain fund for recovery of the damage which will be suffered.” (p. 89); and that, “ If dedication and use for a public purpose is desired, then just compensation must be paid.” (p. 90).
The court held that the statute (L. 1966, ch. 691) failed of its purpose in that it did not provide for the payment of just compensation and was, therefore, unconstitutional.
Although we do not doubt that the claimant was substantially damaged by this unconstitutional statute, we believe such damage fits squarely within the doctrine of damnum ahsque injuria. We do not find that either a de jure or a de facto temporary appropriation was accomplished, which would bring the claim within the jurisdictional powers of this court. We do not believe that every unreasonable interference with real property rights caused by legislative statute must be equated with appropriation. In fact, if one examines the several paragraphs of the claim, the difficulty of bringing the claim within the realm of appropriation law becomes quite clear. As then Chief Judge Desmond stated in his dissenting opinion of the Moerdler decision (19 N Y 2d 78, 91, supra) : “ The law is, however, that the measure of damages for property appropriated for a temporary period of time is the loss of rental value during that time plus any damage to the fee caused by the temporary use (Mead v. State of New York, 24 A D 2d 1043; Spencer v. State of New York, 206 App. Div. 376).” In the claim, among other things, claimant demands $362,411 for legal fees and disbursements allegedly expended in the Moerdler (supra) litigation; $2,045,000 for allegedly increased construction and wrecking costs; and *458 loss of profits. These are claims which .sound in tort and not in appropriation.
Other than the Legislature and the Governor in their respective capacities relative to the enactment of statutes, there were no State officials or agencies involved in any respect in the operation of said statute. The effective moving parties under the statute were the private corporation, the Old Met Opera House Corporation, created by the statute; and, the Superintendant of Buildings of the City of New York, who was given discretionary permission, upon the request of the private corporation and the deposit of a $200,000 security bond, to withhold and refuse to issue a demolition permit for a period of 180 days. As stated on page 87 of the Moerdler decision {supra); “ The Legislature is not willing to invest public funds in order to appropriate the building ’ ’.
The sole rélevant act by State officers in this whole matter was the enactment of a statute. The State of New York has not waived its sovereign immunity from liability in this regard.
As we do not have jurisdiction of the subject matter of the claim, the State’s motion to dismiss the claim is granted.