KEYSTONE ASSOCIATES, Respondent-Appellant, v STATE OF NEW YORK, Appellant-Respondent. (Claim No. 49592.)

Third Department, December 16, 1976

*Louis J. Lefkowitz, Attorney-General (Vernon Stuart* and *Ruth Kessler Toch* of counsel), for appellant-respondent.

*Bergreen & Bergreen (Martin Blackman, David Brady* and *Carl Golden* of counsel), for respondent-appellant.

*Per Curiam.* This case is on appeal after more than 10 years of litigation following the closing of the old Metropolitan Opera House (the "Old Met") in New York City in 1966. Before moving to its new quarters in the Lincoln Center the Metropolitan Opera Association, Inc. entered into a 50-year lease which called for the demolition of the old building and construction of a modern office building on the site of the Old Met. There was a ground rent of $200,000 for the first four years, with increments thereafter. Claimant, Keystone Associates, became the assignee of that lease, and on May 16, 1966 made an application for a demolition permit. However, on that same date, the Legislature passed a bill, signed by the Governor on June 24, 1966 (L 1966, ch 691) whereby a corporation was created for the purpose of acquiring and preserving the Old Met by condemnation proceedings. Under the statute, a demolition permit could be withheld for 180 days upon the deposit of $200,000 as security. During this time the corporation was to raise funds privately to acquire the building.

Claimant brought suit to have the statute declared unconstitutional and was successful *(Matter of Keystone Assoc. v Moerdler,* 19 NY2d 78). The Court of Appeals held that the deprivation of the use of the property for that 180-day period was a taking of property without just compensation. The court

noted that it appeared that certain fixed costs might exceed the amount of $200,000 and that, in any event, the determination of "just compensation" was a judicial function. The demolition permit was thereafter issued on January 17, 1967, eight months after application had been filed, and demolition commenced on the same day.

On May 11, 1968, claimant filed a claim seeking to recover damages for the temporary appropriation of its interest during the eight-month delay in issuance of the permit. The State moved to dismiss, and the motion was granted *(Keystone Assoc. v State of New York,* 63 Misc 2d 455). On appeal, this order was reversed upon a holding that the Court of Claims had jurisdiction and that the claim stated a cause of action *(Keystone Assoc. v State of New York,* 39 AD2d 176, affd 33 NY2d 848).

The Court of Claims, in the decision now before us for review, awarded the claimant $626,800 for lost profits and increased costs of construction offset by increased rents due to the delay. The court also awarded claimant $150,000 for legal fees and expenses incurred in the course of having the statute declared unconstitutional.

The present appeal in this case comes to the court in the posture of a temporary easement which precluded the claimant as tenant from exercising any possessory interest in the land and/or buildings. This proceeding is not concerned with the question of whether or not the owner of the fee suffered any damages as a result of the State's appropriation.

The State first argues that the Court of Claims erred in awarding lost profit and increased construction costs. We agree. The established rule of compensation for a temporary appropriation is that the claimant is entitled to recover the loss of rental value during the period of appropriation plus any damages to the fee *(Great Atlantic & Pacific Tea Co. v State of New York,* 22 NY2d 75; *Mead v State of New York,* 24 AD2d 1043).

In *Arlen of Nanuet v State of New York* (26 NY2d 346), the Court of Appeals held that it was inappropriate to fix the leasehold value of vacant land appropriated by the State by capitalizing projected net income to be received from subleases for space in a shopping center to be built. In that case, it was urged that the projected rents could have been fixed with considerable certainty because a nearby site was used when the subject property was appropriated. The Court of Appeals

stated, however, that it would be erroneous to treat such items as if they represented an existing flow of income. To use such rents violated "the principle that, to determine the market value of land appropriated, we must look to the situation existing on the day of the taking" (26 NY2d, at p 354).

Upon the last appeal to this court (39 AD2d 176, 179) there was no indication that the claimant was *in fact* entitled to damages. The holding was limited to defining the status of the claim and that as a preliminary matter a taking had been established. It was noted that the measure of damages was the loss of rental value plus any damage to the fee. In the present case it is established that there was no compensable damage to the fee which would be awarded in the present proceeding. It is also now established that there was no loss in rental value to the claimant for the period at issue. What the claimant seeks are damages relating to its proposed use of the land and which use was interfered with by delay.

To show such a loss as claimant asserts is not satisfied by showing increased construction costs or "lost" rentals for the period of delay. The question is whether or not the economic rents exceeded the costs of the tenant and, if so, by how much. That the new building may have cost more because of inflation is meaningless as presumably rents would also increase with inflation. To contend that eight months of rentals were lost requires proof that the building could not have been more rapidly constructed. The fact is that the building on the premises had to be demolished and that it had no value at all. There is nothing but speculation as to any damage to the claimant when considered as a temporary, total easement. The present action presents an *ad hoc* situation created by an act of the Legislature which attempted to provide *just* compensation for the "withholding of a demolition permit".

However, the term "just compensation" cannot be rendered meaningless and the present situation is such as to require an exception to the general rule of damages in regard to rental value. The existence of a temporary easement requires that the claimant receive as damages all carrying and maintenance costs during the period of the easement and we *find* that except for such costs the claimant failed to establish any damages.

The State also contends that the Court of Claims erred when it awarded claimants legal fees and expenses incurred in

litigating the constitutionality of chapter 691 of the Laws of 1966. The general rule is that counsel fees in an appropriation claim are merely incidents of litigation and are not compensable *(City of Buffalo v Clement Co.,* 28 NY2d 241; Court of Claims Act, § 27). In the present case, the Court of Claims has made an award to claimant for legal fees incurred not in the present litigation by which the *amount* of compensation was sought to be determined, but rather for the predecessor litigation establishing claimant's *right* to compensation. In doing so, reliance is placed on the following statement from *Terrace Hotel Co. v State of New York* (19 NY2d 526, 530-531): "It is a well-settled principle, firmly established in both our statutes and case law, that, if the State seeks to discontinue or abandon a condemnation proceeding, it may be required, in the court's discretion, to pay to the landowner "full indemnity for the expenses to which he was subjected" *(Matter of Waverly Water Works Co.,* 85 NY 478, 482 * * *)."

We feel that *Terrace Hotel Co. v State of New York (supra)* is inapposite. As the quoted language indicates, that case involved a situation where, after the claimant had incurred expenses in preparing to seek compensation, the condemnation proceeding was abandoned. Here, on the other hand, there has in fact been a compensable taking, albeit temporary, and both the prior and present litigation cannot be treated separately insofar as both have been undertaken in seeking to establish not only claimant's entitlement to compensation, but the amount thereof. It is salutary that in the process unconstitutional legislation has been brought to judicial scrutiny, and we may sympathize that claimant may be forced to bear the burden of correcting legislative error, but our jurisprudence does not provide for reimbursing those who undertake legal expenses to vindicate their rights. The award of legal fees and expenses in the amount of $150,000 must be reversed.

The judgment should be reversed, on the law and the facts, without costs, and the matter remitted to the Court of Claims with direction to take such further proceedings as it may deem appropriate and thereupon to award damages in the amount of all carrying costs and maintenance costs during the period of the easement less whatever sum the claimant received from the security deposit provided by chapter 691 of the Laws of 1966.

GREENBLOTT, J. (concurring in part and dissenting in part). We respectfully dissent from that portion of the majority's

decision which limits the award of damages to carrying costs and maintenance costs during the period of the easement less whatever sum the claimant received from the security deposit provided by chapter 691 of the Laws of 1966, without costs.

The majority refers to *Arlen of Nanuet v State of New York* (26 NY2d 346) as setting forth the applicable rule of damages, but errs, in our opinion, in limiting such damages to actual carrying and maintenance costs. Since the claimant is complaining about interference with its proposed demolition of the existing structure, the correct measure of damages should be the fair rental value of the land alone as of the date of the taking and for the duration thereof. The fair rental value should be fixed as that price which would be paid upon a lease between a willing lessee and a willing lessor.

Where the majority errs, in our view, is in equating fair rental value with the leaseholder's actual costs, for to do so is to disregard the actual economic value of the land to a sublessee.

The property appropriated in the present case was intended to be developed. In estimating the fair rental value of the property during the period of the taking, a willing lessee could take into account, *inter alia,* future projections. "[O]ne cannot 'expect the prospective purchaser to pay for the * * * land in suit an amount equal to the worth of the conjectured net rental income * * * for, then, he would be paying an amount which would preclude any profit' " *(Arlen of Nanuet v State of New York, supra,* p 353, citing *Levin v State of New York,* 13 NY2d 87, 91).

While potential profits themselves would be an inappropriate measure of damages, projected return on the basis of development plans suitable to the property could be taken into account by experts, together with the other figures cited, in determining fair rental value. Of course, the weight to be given such projections as an *element* used in the determination of fair economic rent in the open market would be determined by the trier of fact. The majority errs, in our view, in measuring claimant's damages by the actual rent reserved in claimant's lease rather than by the fair value a lessor could be expected to receive as of the date of the taking (see *Great Atlantic & Pacific Tea Co. v State of New York,* 22 NY2d 75, 81, 85). Neither of the experts in the present case offered testimony as to the fair rental value of the property as it was during the period of the taking.

We would, therefore, remit the matter to the Court of Claims for a new trial.

KOREMAN, P. J., LARKIN and HERLIHY, JJ., concur in *Per Curiam* opinion; GREENBLOTT and MAIN, JJ., concur in part and dissent in part in an opinion by GREENBLOTT, J.

Judgment reversed, on the law and the facts, without costs, and matter remitted to the Court of Claims with direction to take such further proceedings as it may deem appropriate and thereupon to award damages in the amount of all carrying costs and maintenance costs during the period of the easement less whatever sum the claimant received from the security deposit provided by chapter 691 of the Laws of 1966.