OPINION OF THE COURT
Thomas P. McMahon, J.
The instant claim for legal and accounting fees has a long and tortured history.[1] At the time of his death on February 13, 1976, Bernard P. Birnbaum was the State-licensed operator of the Abbott Manor Nursing Home in Buffalo. Abbott Manor’s operations were not profitable, and Mr. Birnbaum’s estate sought either to renegotiate its rate of Medicaid reimbursement from the State or to shut down operations completely. It was unsuccessful on both counts. The State obtained a temporary restraining order September 5, 1976 requiring *404 Abbot Manor to remain open; and on November 4, 1976 obtained the appointment of coreceivers, two Abbott Manor employees, to run the operation nunc pro tunc as of October 20, 1976.
There followed a series of legal proceedings and hearings (all before Supreme Court Justice Theodore S. Kasler) in which the compensation to be paid the estate for the reasonable rental value of Abbott Manor and for reimbursement of costs incurred in connection with Abbott Manor’s continued operation subsequent to the coreceivers’ appointment were established by court order. The State resisted enforcement of these orders.
Next, by order dated May 25, 1978 Justice Kasler terminated the employee coreceivers and substituted in their place the Commissioner of the Department of Health, Robert P. Whalen, requiring him to pay all future operating expenses of Abbott Manor as well as the compensation to which the estate had previously been adjudged entitled ($416,714 plus interest and costs). On appeal from this order the Appellate Division concluded that the Supreme Court had jurisdiction to determine administrative issues between the Commissioner and the estate, to appoint receivers and to mandate the continued operation of Abbott Manor, but not to try money claims against the State of New York. It ordered that the estate be permitted to pursue its money claims in the Court of Claims despite having failed to comply with the statutory requirements regarding filing of notices of intention. (People v Abbott Manor Nursing Home, 70 AD2d 434 [4th Dept 1979], affd 52 NY2d 766 [1980].)
Three claims were subsequently filed in this court on various theories. In the instant claim, No. 63695, concerning the period of the receivership, this court has already concluded that imposition of the receivership constituted a temporary taking for which the State was obligated to compensate claimants, and has calculated just compensation therefor. See our memorandum decision filed August 25, 1982 on a motion for partial summary judgment.[2] Several items of damage, however, including the attorney and accounting fees at issue here, were ordered severed and set down for trial.
*405 At the subsequent trial on the remaining issues in claim No. 63695, claimants produced testimonial and documentary evidence to substantiate their claims for accountant and attorney fees and stipulated to a discontinuance of all other unresolved matters set forth in the amended partial summary judgment entered March 5, 1986. Accordingly, we proceed to the questions whether claimants are entitled to recover their accounting and legal expenses and whether those expenses were fair and reasonable.
It is well established in New York and in nearly all other State jurisdictions that constitutionally required just compensation does not include legal and associated expenses incurred in fixing the value of property taken by eminent domain.[3] Payment for expert witness and legal fees generally is not awarded except where specifically authorized by statute. (Matter of City of Brooklyn, 148 NY 107, 109 [1895]; Matter of Board of Rapid Tr. R. R. Commrs., 197 NY 81 [1909]; Legislature of County of Monroe v Lubelle, 94 Misc 2d 413 [Sup Ct, Monroe County 1978].) Such statutory authorization is both uncommon and narrow in scope where offered.
Reimbursement for reasonable attorney fees is mandated under limited circumstances by EDPL 702 (B) and (C). Subdivision (B) requires such reimbursement "[i]n the event that the procedure to acquire such property is abandoned by the condemnor, or a court of competent jurisdiction determines that the condemnor was not legally authorized to acquire the property”. Subdivision (C) requires "[i]n the event that a court of competent jurisdiction determines that the condemnor did in fact take property after the condemnor denied that there was any taking of property and made no offer to settle the claim” that reimbursement be made for "actual and necessary costs, disbursements and expenses, including reasonable attorney, appraiser and engineer fees incurred in establishing the de facto taking.”[4]
This court has previously found that the State’s insistence upon running Abbott Manor after claimants’ attempt to close it constituted a de facto taking. That action by the State put *406 claimants in the unenviable position of being effectively deprived of their property by the sovereign and deprived of the normal procedural protections of the EDPL surrounding exercise of the power of eminent domain because there had been no de jure taking. Thus, claimants had to establish first that a taking had been effected, and second, the value of the property taken. It is just such cases that EDPL 702 (C) was intended to address.
Not only did the Department of Health deprive claimants of their property, but throughout a prolonged and difficult series of negotiations, it fought tooth and nail against making any accommodation whatsoever with the estate. As a result, substantial legal fees were incurred. These include $15,895 owed to the Buffalo firm of Moot, Sprague, Marcy, Landy, Fernbach & Smythe for its representation through December 1976; $40,362.87 owed to the firm of Miller, Farmelo, Cane & Greene of Buffalo for services rendered between January 1977 and March 1980; $152,692 owed to Stroock & Stroock & Lavan of New York City for its efforts in the Appellate Division and Court of Appeals in 1979 and for its pursuit of the three Court of Claims actions; $19,246 to the Rochester firm of Woods, Oviatt, Gilman, Sturman & Clarke for its services from April 1985 to date; and $10,000 to Sidney Finger of New York City, a certified public accountant who performed valuation services in connection with the Abbot Manor litigation.
The court has heard the State’s arguments to the effect (1) that EDPL 702 (C) does not provide authority for the award sought herein; and (2) that the Supreme Court is the appropriate forum for this application because most of the fees charged were incurred for matters handled in that court.
We reject the latter argument outright. The Appellate Division decision published at 70 AD2d 434, which was discussed above, makes it clear that claimants must look to this court for resolution of their money claims against the State. Further buttressing this conclusion is EDPL 501 (A), which confers on the Court of Claims "exclusive jurisdiction to hear and determine all claims arising from the acquisition of real property by or in the name of the people of the state of New York”.
The State’s first argument, however, presents us with an issue of first impression. Court of Claims Act §27 provides: "Except as provided in section 701 of the eminent domain procedure law and sections 3126 and 8303-a of the civil *407 practice law and rules, costs, witnesses’ fees and disbursements shall not be taxed, nor shall counsel or attorney’s fees be allowed by the court to any party.” In its original incarnation, section 27 contained no exceptions and simply forbade payment of counsel fees and other costs of litigation. It was amended (eff July 1, 1978) after enactment of the Eminent Domain Procedure Law to provide the exception for expenses awarded under EDPL 701 (L 1978, ch 727, § 1). Further amendments expand the exceptions to include costs awarded under CPLR 3126 and 4545 (L 1984, ch 183, § 1; L 1986, ch 220, §37; L 1987, ch 307, § 1 substituted reference to CPLR 8303-a for CPLR 4545).
Prior to the enactment of the EDPL, judicial decisions varied in their treatment of litigation costs in certain condemnation proceedings. Terrace Hotel Co. v State of New York (19 NY2d 526 [1967]), for example, concluded that the general prohibition of section 27 was not "designed to prohibit the award of legal expenses and counsel fees by the court upon discontinuance of eminent domain proceedings by the State. The discretionary power of the courts to make such awards existed at common law * * * and it has consistently received legislative sanction” (19 NY2d, at 531 [citations omitted]).
Subsequently, in Keystone Assocs. v State of New York (82 Misc 2d 620 [1975]), the Court of Claims followed the reasoning of Terrace Hotel (supra), in awarding legal expenses for what the court characterized as "a discontinuance of a temporary taking because of lack of valid authorization for such taking”, (82 Misc 2d, at 628.) In Keystone, the temporary taking had also been determined to be a de facto taking resulting from an eight-month delay in issuance of a demolition permit for the old Metropolitan Opera House in New York City. (Claimants were lessees whose lease called for demolition of the Old Met and construction and leasing of an office building on the site.) On appeal, however, the decision was reversed and the Third Department, focusing sharply on the de facto nature of the taking, found that the case was distinguishable from Terrace Hotel. (Keystone Assocs. v State of New York, 55 AD2d 85 [1976].)[5] The court implied that litigation expenses incurred in establishing the unconstitutionality of Laws of 1966 (ch 691), which had authorized withhold *408 ing the demolition permit, might be compensable under the reasoning in Terrace Hotel. It further found, however, that these expenses were inseparable from those incurred in establishing the value of the property right taken, and relied upon section 27 of the Court of Claims Act to deny reimbursement of legal expenses.
EDPL 702 (B) and (C) address the fact situations presented in Terrace Hotel (supra) (EDPL 702 [B]) and in Keystone Assocs. (supra) (EDPL 702 [c]) and treat both the same, i.e., provide for award of attorney fees and other expenses. We conclude, accordingly, that EDPL 702 legislatively overrules the result reached by the Third Department in Keystone Assocs. to the extent that that decision would deny payment of expenses incurred in establishing an unauthorized taking simply because they were intertwined with expenses incurred to establish the value of a de facto taking.
On the other hand, the amendment of Court of Claims Act § 27 to recognize awards under EDPL 701 and the amendment’s silence with respect to EDPL 702 logically tend to indicate that expenses awarded pursuant to EDPL 702 cannot be collected from the State of New York. In examining section 27 in light of the EDPL as a whole, however, this court is led to just the opposite conclusion.
The purpose of the EDPL is "to provide the exclusive procedure by which property shall be acquired by exercise of the power of eminent domain in New York state”. (EDPL 101.) A condemnor referred to in the EDPL is "any entity vested with the power of eminent domain.” (EDPL 103 [D].) Section 104 provides that the law "shall be uniformly applied to any and all acquisitions by eminent domain of real property within the state of New York.” EDPL 501 distinguishes between condemnation proceedings begun by the State, over which the Court of Claims has jurisdiction, and all other condemnation proceedings, over which Supreme Court has jurisdiction.[6] This general distinction between Supreme Court and Court of Claims jurisdiction is observed in several other provisions of the law, viz., EDPL 402, 403, 502, 503, 506, 507, 508 and 511. Significantly, sections 701 and 702 make no distinction between the two classes of proceedings with respect to awards of expert witness’ fees, attorney fees, and other costs. The logical import of these provisions, clearly, is that *409 both were intended to apply equally to condemnation proceedings irrespective of whether jurisdiction over such proceedings lay in the Court of Claims or in Supreme Court. Finally, EDPL 705 provides as follows: "Notwithstanding any inconsistent provisions of law, general or special, the provisions of this law shall be controlling and on and after the effective date of this law, any interest in real property subject to acquisition shall be acquired pursuant to the provisions of this law.”
We conclude that reading Court of Claims Act § 27 to prohibit the award of expenses described in EDPL 702 is utterly inconsistent with the purposes and over-all scheme of the Eminent Domain Procedure Law and is incorrect. We further find Terrace Hotel Co. v State of New York (19 NY2d 526, supra) to provide authority for the award of accounting and legal fees in this claim.
We find the amounts charged for legal and accounting services in connection with establishing the estate’s right to recover from the State of New York for a de facto appropriation of the Abbott Manor Nursing Home to be in all respects fair and reasonable.
Pursuant to CPLR 5001 (a), claimants are entitled to prejudgment interest because this award arises from the State’s act depriving them of possession and enjoyment of their property. In such cases, "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.” (CPLR 5001 [b].) This general rule is, of course, subject to the limitation placed upon claims against the State by Court of Claims Act § 19 (1) and EDPL 514 (B), prohibiting payment of interest for the period six months subsequent to the accrual of a claim until the actual filing of the claim in those cases where claimants fail to file within six months of the date of accrual.
In Terrace Hotel Co. v State of New York (31 AD2d 860 [3d Dept 1969]), the Appellate Division concluded that claimant was entitled to interest on an award of attorney fees under CPLR 5001 (b) from "the earliest ascertainable date the cause of action existed”. That date was determined to be the date upon which the State’s motion to discontinue its appropriation *410 proceeding was granted. Because the State voluntarily discontinued its proceedings (as the result of an unfavorable Court of Appeals ruling in another matter), all the legal expenses were incurred prior to the time the cause of action was found to have arisen, and none were contemplated thereafter.
The instant claim, however, presents a different situation because here there was no abandonment of a de jure proceeding. It was not until this court’s memorandum decision of August 25, 1982 that claimants received any judicial recognition that a de facto appropriation had in fact occurred. The State, as mentioned above, appealed that decision and upon receiving an unfavorable result from the Appellate Division sought to appeal to the Court of Appeals. Presumably when a final order is entered herein the State will again seek review by the Court of Appeals. We emphasize this point because we view all the legal expenses incurred by the estate from September 5, 1976[7] forward as incurred for the purpose of establishing a de facto taking.
In a direct action by an attorney for fees, interest would normally be computed from the date of demand for payment unless such demand predated the completion of services. In the latter case, interest would be computed from the date the attorney’s services terminated. (5 Weinstein-Korn-Miller, NY Civ Prac ¶ 5001.10; Neimark v Martin, 7 AD2d 934 [2d Dept 1959]; Brent v Keesler, 32 AD2d 804 [2d Dept 1969].) In this case, however, we are dealing with an action by a client to recover attorney fees already paid or incurred. Accordingly, we conclude that it is the date upon which the estate rendered payment that governs with respect to computation of interest, rather than the date on which the services were completed or billed.
The Moot, Sprague and Miller, Farmelo firms’ files were destroyed; Mr. Finger has never been paid for his services; Moot, Sprague was not paid in full; Woods, Oviatt has been paid for past services but will clearly provide more services in the future; and Stroock has been paid at least $490,000 on account by order of the Monroe County Surrogate without earmarking (an amount which reflects only partial payment for its substantial involvement in the tangled affairs of the Birnbaum estate). Consequently, we have constructed a schedule that we think fairly compensates claimants for attorney *411 and accountant fees incurred and to be incurred in this matter. Pursuant to Court of Claims Act § 19 (1) and EDPL 514 (B), all items paid more than six months prior to the filing of claim No. 63695 (Nov. 30, 1979) are subject to suspension of interest for the period six months subsequent to such payment until the date the claim was filed. In constructing the schedule for calculation of interest we have used the Moot, Sprague and Miller, Farmelo exhibits to ascertain as nearly as possible the actual dates payments were made and have used those dates. For amounts unpaid as of the date of trial, we have used the date of decision; for the portion of the Woods, Oviatt bill that was paid prior to trial we have used the date of trial as no specific payment date was supplied; and for the Stroock bills we have used the dates of two Monroe County Surrogate orders authorizing payments from the estate to that firm.[8]
We recognize that the statute is directed at compensation for legal expenses incurred incident to establishing the existence of a de facto taking and not at the expenses of establishing the value of the property taken. (See, 1974 Report of State Commn on Eminent Domain and Real Property Tax Assessment Review, Comment to §702, at 58.) The nature of this claim, however, and the complex issues connected with it make it virtually impossible for the court to separate out the "de facto” expenses from the "valuation” expenses. The greatest part of the expense incurred was clearly directed at obtaining judicial recognition in some form of a right to payment. Moreover, the expense of ascertaining the costs of running Abbott Manor was necessary to establish to judicial satisfaction that the State’s interference with Abbott Manor rose to the level of a deprivation of property. Had the State’s interference been less pervasive or had it negotiated an interim level of Medicaid reimbursement acceptable to claimants, the receivership might not have been viewed as confiscatory in nature. We conclude that claimants are entitled to the full amount of legal and accounting fees sought.
Claimants’ motion to increase the ad damnum for attorney *412 fees is hereby granted.[9] (See, Loomis v Civetta Corinno Constr. Corp., 54 NY2d 18 [1981].) Claimants are hereby awarded the additional sum of $238,191.62 with statutory interest thereon as set forth above. The clerk of the court is hereby directed to amend the amended partial summary judgment previously entered in this claim to reflect: (1) the award of $238,191.62 for accountant and attorney fees with statutory interest thereon as set out above, and (2) claimants’ discontinuance or abandonment of all other items left open in the judgment entered March 5, 1986. The clerk of the court is also directed to delete the term “partial” from the judgment’s caption as said judgment now disposes of all items raised in claim No. 63695.
[Portions of opinion omitted for purposes of publication.]

. The Appellate Division decision in People v Abbott Manor Nursing Home (70 AD2d 434 [4th Dept 1979]) and our unpublished memorandum decision in claims Nos. 63695 and 63694, filed August 25, 1982 (affd 99 AD2d 652 [1984], appeal dismissed 68 NY2d 641 [1986]), describe the background of this claim in detail.

. The motion had also been addressed to claim No. 63694, which concerned the period prior to imposition of the receivership. As to claim No. 63694, however, triable issues of fact were found to exist and the motion was denied.

. See generally, Searles, Attorney’s Fees in Condemnation Proceedings, 56 NYS BJ 20, 21 (Apr. 1984).

. See also, EDPL 701, which allows payment of up to $10,000 for extraordinary expert witness fee expenses in cases where the court’s award is at least 200% of the amount of the condemnor’s proof. Such additional award cannot in any case, however, exceed 10% of the difference between the basic award and the amount of the condemnor’s proof.

. The Appellate Division decision was subsequently reversed and remitted to the Court of Claims for a new trial on the issue of proper computation of fair rental value. (45 NY2d 894 [1978].)

. Except for any other proceedings over which the Court of Claims has specifically been conferred with jurisdiction by statute.

. This finding is not intended to decide claim No. 63694 mentioned above.

. Because of the difficulty of ascertaining when certain of the payments were made, and the continuing need for legal representation, this claim also lends itself to computation of interest from a single reasonable intermediate date pursuant to CPLR 5001 (b). We recognize the lack of precision in our choice to compute interest from dates of payment for services and view the selection of a single date as equally appropriate. Nevertheless, we attempt to be as precise here as the record permits in establishing interest computation dates.

. The court has sua sponte granted an additional increase of $192 to conform to the proof.